UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| LOUVENNA JOHNSON,<br><br>　　　Plaintiff,<br><br>v.<br><br>TIFFANY COLLINS,<br><br>　　　Defendant. | Civil No. 15-31-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Louvenna Johnson is living a nightmare that every parent fears: she has lost custody of her children. Johnson wants her children returned to her. Rather than work with her children's social worker, Johnson has come to federal court asking for her children back. But federal courts are not the appropriate forum to deal with cases involving child custody. Instead, family courts provide the best solution: they have more flexible standards, and they are more familiar with the parties and the latest circumstances in the case. They are better equipped to evaluate all of the facts and find a situation that best balances Johnson's rights as a parent with the safety and welfare needs of her children. For these reasons, the Supreme Court has removed federal court jurisdiction over cases involving child custody decrees. The Supreme Court has also mandated that federal courts not interfere with these types of state proceedings. As such, Collins's motion to dismiss must be granted.

## BACKGROUND

Plaintiff Louvenna Johnson is a 50-year-old woman who identifies as fifty percent Cherokee, and is the mother of two boys, ages 8 and 13. R. 15-6 at 1; R. 1 at 2 (complaint).[1] The Kentucky Cabinet for Health and Family Services ("CHFS") has been involved with Johnson and her children since 2006. That is when CHFS received unsubstantiated allegations of child abuse and neglect by Johnson and her then-husband, Kenny Jacobs. *Id.* at 12–14. But in the summer of 2009, CHFS substantiated Jacobs' abuse of his children when they discovered marks on the children consistent with abuse. *Id.* at 8–9. Initially, CHFS allowed Jacobs to remain with his family. *Id.* at 9. That changed, however, on July 7, 2014, when the abuse escalated. On that date, Jacobs pointed a gun at Johnson's older son and threatened to "blow his head off." *Id.* at 3, 7. The state court granted Johnson an emergency order of protection against Jacobs, which directed Jacobs to have no contact with Johnson's children. R. 15-4 at 1–2. On January 13, 2015, Jacobs pled guilty to wanton endangerment for the incident and was sentenced to up to five years in prison. R. 15-5 at 1–3.

After the incident involving Jacobs, CHFS continued its involvement with Johnson's family due to allegations of child neglect, specifically that Johnson had difficulties obtaining

---

[1] Generally, a court may only consider the facts from the complaint and its exhibits in deciding a motion to dismiss. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). However, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted). Documents attached to a motion to dismissed are "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, Johnson's complaint briefly references the state court proceeding and the circumstances under which her children were taken, but includes very few facts and contains no attached documentation. *See* R. 1. Defendant attached to its motion to dismiss the relevant state court documents and the documents the state court considered. *See* 15-2–11 (exhibits attached to Collins' motion to dismiss). Because the Court must examine the nature of the state court proceedings to determine whether abstention is appropriate, the Court includes facts from these documents in the background section. Any other facts are included to provide more background to the case, but are not used to determine whether the Court has jurisdiction or whether abstention is appropriate.

2

food, water, and electricity. *See, e.g.*, R. 15-1 at 2–3 (motion to dismiss); R. 15-6 at 6 (describing allegations that Johnson's home had no electricity or way to heat her home); R. 15-3 at 8 (noting that Johnson failed last two inspections of her apartment). In March and April of 2015, conditions for Johnson's family worsened. *See* R. 15-6 at 2. CHFS received reports that Johnson left her children unsupervised for hours at a time, and the children's school reported that the children were unkempt and dirty. *Id.*; R. 15-3 at 5 (noting that Johnson's youngest child was "very dirty and unkempt" and "had a very foul odor that smelled of feces."). During this period, Jacobs was released from prison. *See* R. 15-3 at 7. On April 16, 2015, CHFS received an allegation that Johnson's youngest child reported sexual abuse by Jacobs. R. 15-3 at 4–5; R. 15-6 at 2. The report also alleged that Johnson allowed Jacobs to visit the children on multiple occasions. R. 15-3 at 4; R. 15-6 at 2. That was not all. Johnson's case worker, defendant Tiffany Collins, discovered that Johnson's youngest child was not taking his daily mental health medications. R. 15-8 at 1; *see also* R. 13-3 at 26, 33 (prescribing Seroquel for Johnson's son every night). Collins attempted to contact Johnson multiple times without success. R. 15-3 at 2–6.

On April 17, 2015, Collins arrived at Johnson's home to find her oldest son home alone. R. 15-8 at 1. He reported to Collins that Johnson left him home alone on several nights while she was staying at her new boyfriend's home, and that he had no way of contacting his mother. *Id.* Letcher Family Court issued an emergency custody order that placed both children in the emergency custody of CHFS. R. 15-8 at 1–4. CHFS placed the children with a foster family. R. 15-1 at 7. The foster family took the children to Tennessee for a trip that weekend. *Id.* Collins alleges that Johnson gave permission for the trip, R. 15-10 (permission slip signed by Johnson), but Johnson disputes this fact. *See* R. 1; R. 7 at 10

(plaintiff's "reply").  The children returned to Kentucky on April 19, 2015, and have remained in Kentucky with their foster family since that date.  R. 15-1 at 7.  On May 8, 2015, the state court held a temporary removal hearing, at which it found "beyond a preponderance of [] evidence that reasonable grounds exist to believe that the [children] would be . . . neglected . . . if left in the custody of the mother."  R. 15-11 at 2, 5.  The court ruled that both children should remain in the temporary custody of CHFS.  *Id.* at 1, 4.  The state court case is still ongoing.  R. 15-1 at 7; *see also* R. 7 at 10 (moving for Judge Mullins to be recused from state court case).

On April 20, 2015, while state court proceedings were pending, Johnson brought suit against Collins in federal court under 42 U.S.C. § 1983.  *See* R. 1.  In her complaint, Johnson alleges that Collins kidnapped her children, forced Johnson to sign papers she did not read or understand, and told Johnson that her children were being placed in a foster home and taken out of state to Tennessee.  *See id.* at 1.  Johnson argues that Collins did not have just cause to remove her children from her custody.  *Id.* ("The social worker said cause was shown . . . but I know these charges are not clear and convincing evidence of abuse and neglect . . . ."). Johnson claims that Collins's actions violated the Indian Child Welfare Act ("ICWA") and the Federal Kidnapping Act.  *Id.* at 2.  Johnson seeks injunctive relief—in the form of the return of her children, the removal of Collins from her position in CHFS, and the prosecution of the "wrongdoers"—as well as punitive damages.  *Id.* at 2–3.  Johnson also has two motions pending before this Court along with her complaint.  On May 5, 2015, Johnson filed a motion (styled as a reply) for state court Judge Kevin Mullins to be recused from her case, and for Judge Mullins and Collins to produce blood test results and medical records.  R. 7. On May 15, 2015, Johnson filed a motion to compel discovery and for an injunction, in

4

which she again moved for the immediate return of her children, the removal of Collins from her position, and the recusal of Judge Mullins.  *See* R. 11 at 1–4.

On May 22, 2015, Collins filed a motion to dismiss Johnson's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  R. 15.  The deadline to respond passed without any response from Johnson.  *See* LR 7.1(c) (noting that a party opposing a motion must file a response memorandum within 21 days of service and that a failure to respond "may be grounds for granting the motion").  On June 22, 2015, the Court ordered Johnson to show cause as to why she did not respond to defendant's motion to dismiss and why the Court should not grant the motion as a result.  R. 19.  Johnson responded to the order to show cause, stating that her reply, R. 7, was her response to Collins's motion to dismiss.  R. 20.  But Johnson filed her reply on May 5, 2015, 17 days before Collins filed the motion to dismiss.  So Johnson's reply could not have responded to Collins's future motion to dismiss.  Despite Johnson's failure to respond, the Court must still examine Collins's motion to ensure that dismissal is appropriate.  *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000).  For the reasons explained below, the Court finds that dismissal of Johnsons' complaint is warranted.

## DISCUSSION

As a threshold matter, the Court must first establish that it has jurisdiction over the case before proceeding to the merits of the motion to dismiss.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotations omitted)).  Here, the Court lacks subject matter jurisdiction, so the case must be dismissed.  *See Ex parte*

5

*McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause."). Federal courts lack jurisdiction to issue child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."). Even when a plaintiff raises other claims, federal courts do not have jurisdiction when the "core" issue is one of domestic relations, meaning that the plaintiff seeks a divorce, alimony, or child custody decree. *See Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 1998), *opinion amended on rehearing*, 243 F.3d 234 (6th Cir. 2001), *overruled on other grounds*, *Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006) (explaining that the key question is whether the case is "a 'core' domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a [domestic relations dispute]"); *see also Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues.").

In this case, Johnson asserts the violation of two federal rights, but she "essentially raises domestic issues" because she is challenging the state's removal of her children from her custody and seeking relief in the form of the return of her children. *Partridge v. State of Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003). Johnson does raise claims under 42 U.S.C. § 1983, specifically alleging violations of ICWA and the Federal Kidnapping Act. R. 1 at 2. But Johnson's core concern is clear on the face of her complaint: she believes Collins improperly removed her children from her custody. First, Johnson alleges that Collins lacked cause to remove Johnson's children from her custody, and she lists facts to support this claim. *Id.* at 1–2. Second, she asserts that Collins kidnapped her children from her, *id.*

6

at 1, which implies that Collins did not have the authority to remove her children. Finally, Johnson's main request is to have her children returned to her. *See id.* at 3 ("I demand [i]mmediately, give my children back to me and stop kidnap[p]ing them . . . ."). Because the core issue in Johnson's case involves a child custody decree, the Court lacks jurisdiction to decide Johnson's case. *See Hughes v. Hamann*, 23 F. App'x 337, 338 (6th Cir. 2001) (holding that the district court lacked jurisdiction when a plaintiff claimed his constitutional rights had been violated by the state's removal of his children, and the plaintiff sought an injunction returning his children to his custody).

Even if the Court had jurisdiction over the case, though, the Court would still be required to abstain under the doctrine established in *Younger v. Harris*. 401 U.S. 37 (1971). Generally, pending parallel state court proceedings do not bar a federal court from exercising its jurisdiction to hear and decide a case. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). However, the Supreme Court has identified certain "exceptional" situations in which a federal court must abstain from interfering with ongoing state court actions. *Id.*; *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). *Younger* specifically requires abstention when there is an ongoing state criminal proceeding. *See* 401 U.S. 37. However, the Supreme Court has extended *Younger* to a limited number of civil proceedings that concern state proceedings "akin to a criminal prosecution" in "important respects." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). State child removal proceedings are one of the criminal-like state proceedings to which *Younger* extends. *See Moore v. Sims*, 442 U.S. 415 (1979). In *Moore*, the Supreme Court reasoned that *Younger* abstention was appropriate because the temporary removal of a child in the child abuse context is "in aid of and closely related to criminal statutes." *Id.* at 423

7

(internal quotation marks omitted).  Like the other civil extensions of *Younger*, child removal cases are often initiated to sanction the federal plaintiff, include a state actor who initiates the state action, and involve investigations that may culminate in the filing of charges or a formal complaint.  *See Sprint*, 134 S. Ct. at 592 (describing the characteristics of civil proceedings that the Supreme Court has deemed similar to criminal proceedings).

*Younger* bars federal courts from interfering in applicable state court proceedings that (1) are ongoing; (2) involve an important state interest; and (3) provide adequate opportunity to raise a constitutional challenge.  *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008).  In this case, all three requirements are met, so *Younger* mandates dismissal.  *See Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)) (explaining that courts may dismiss under *Younger* without addressing jurisdiction or the merits).  First, Johnson does not dispute that the state custody proceedings are still ongoing, R. 11-2 (Defendant's motion to hold discovery in the state court proceeding in abeyance pending the resolution of this case).  *See* R. 1 (complaint); R. 7 (Johnson's reply); R. 11 (Johnson's motion to compel); R. 18 (Johnson's final answer); R. 20 (Johnson's response to the order to show cause).  In fact, by moving for Judge Mullin's recusal, Johnson admits that the state proceedings are still pending.  *See* R. 7; R. 11.  Second, the state has a compelling interest in protecting children from abuse and neglect.  *Moore*, 442 U.S. at 435 ("Family relations are a traditional area of state concern."); *Kottmeyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) ("The right is limited by an equally compelling government interest in the protection of children, particularly where the children need to be protected from their own parents.").  Finally, Johnson raises only statutory challenges, not constitutional challenges, so the third *Younger* requirement does not apply.  Even if Johnson did have constitutional

8

challenges, though, there is nothing to suggest that the state court would not provide an adequate forum to raise them.[2] *See Moore*, 442 U.S. at 435 ("We are unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."). Because all three requirements of *Younger* are met, *Younger* mandates abstention in this case.

## CONCLUSION

The Court recognizes the hardships Johnson faces. The loss of child custody is devastating to a parent. But the difficult task of determining the best situation for Johnson's children, taking into account their safety and welfare needs as well as their emotional needs, is something best left to state family courts and CHFS—both of which deal with child custody issues much more frequently than federal courts do. State family courts are also equipped with the best tools and information necessary to accomplish this task. Most importantly, though, federal courts are equal to state courts, not superior. And the Supreme Court, through both the domestic relations exception to jurisdiction and *Younger* abstention, reasonably bars federal courts from interfering in this type of dispute.

Accordingly, it is **ORDERED** that:

(1)  Defendant Tiffany Collins's motion to dismiss, R. 15, is **GRANTED**.

---

[2] Johnson did file a motion to recuse Judge Mullins from the state court proceedings, alleging that Judge Mullins refused to provide her due process and equal protection. *See* R. 7 at 8–9; R. 11 at 3–4. This might, at first glance, suggest that the state court does not provide an adequate forum for Johnson to raise potential constitutional challenges. But state courts are fully capable of handling motions of recusal. *See* Ky. Rev. Stat. § 26A.015(2) (2015) (describing the situations in which judicial recusal is required, including where the judge has a personal bias concerning a party); Ky. Rev. Stat. § 26A.020(1) (2015) (permitting a party to file an affidavit with the circuit clerk "that the judge will not afford him a fair and impartial trial," in which case "the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a . . . judge of the Court of Justice as special judge"). Johnson may file an affidavit with the circuit clerk asking for Judge Mullins's recusal, and the Chief Justice will impartially review the facts to determine if Judge Mullins should be recused.

(2)  Plaintiff Louvenna Johnson's Complaint, R. 1, is **DISMISSED WITHOUT PREJUDICE**.

(3)  Plaintiff's Reply, R. 7, and Motion to Compel Discovery and for Injunction, R. 11, are **DENIED AS MOOT**.

(4)  This matter is **STRICKEN** from the Court's active docket.

This the 28th day of July, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge